In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 25-2322

IN RE: ABBOTT LABORATORIES, *et al.*, PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION

TERRAINE ABDULLAH, on her own behalf and as Parent and Natural Guardian of H.S., a minor,

*Plaintiff-Appellant,*

*v.*

MEAD JOHNSON & COMPANY LLC, *et al.*,

*Defendants-Appellees.*

_____

No. 25-2323

HOLLI CARTER, on her own behalf and as Parent and Natural Guardian of J.C., a minor,

*Plaintiff-Appellant,*

*v.*

MEAD JOHNSON & COMPANY LLC, *et al.*,

*Defendants-Appellees.*

_____

No. 25-2324

SHONDERA DRAYTON, on her own behalf and as Parent and Natural Guardian of A.D., a minor,

*Plaintiff-Appellant,*

*v.*

MEAD JOHNSON & COMPANY LLC, *et al.,*

*Defendants-Appellees.*

_____

No. 25-2325

GINA WIEGER, on her own behalf and as Parent and Natural Guardian of S.P., a minor,

*Plaintiff-Appellant,*

*v.*

MEAD JOHNSON & COMPANY LLC, *et al.,*

*Defendants-Appellees.*

_____

No. 25-2327

ALICE STILLS, on her own behalf and as Parent and Natural Guardian of M.E., a minor,

*Plaintiff-Appellant,*

*v.*

MEAD JOHNSON & COMPANY LLC, *et al.,*

*Defendants-Appellees.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 1:22-cv-00071, 1:24-cv-11759, 1:24-cv-11760, 1:24-cv-11761,
1:24-cv-11763, 1:24-cv-11765 — **Rebecca R. Pallmeyer**, *Judge*.

_____

ARGUED FEBRUARY 24, 2026 — DECIDED JULY 28, 2026

_____

Before RIPPLE, KOLAR, and MALDONADO, *Circuit Judges*.

RIPPLE, *Circuit Judge*. These five cases are a small subsection of several hundred similar cases against Abbott Laboratories ("Abbott"), Mead Johnson & Company LLC, and Mead Johnson Nutrition Company (together, "Mead").[1] Many of these, including these five cases now before us, have been consolidated in an MDL proceeding in the Northern District of Illinois.[2]

The cases before us were filed originally in Pennsylvania state court and were later transferred to federal court by the defendants. Even though there were non-diverse defendants, the district court believed that its subject matter jurisdiction was secure under 28 U.S.C. § 1332. It took the view that the

_____

[1] For the purposes of this appeal, we will refer primarily to the record in *Abdullah v. Mead Johnson & Co. LLC, et al.*, No. 1:24-cv-11759 (N.D. Ill.) (hereinafter "Abdullah R."), because the relevant records in the five cases are substantially the same. When necessary, we will reference the records in the other four cases by plaintiff's name.

[2] Transfer Order, *In re: Abbott Lab'ys, et al., Preterm Infant Nutrition Prods. Liab. Litig.*, MDL No. 3026, R.119 (J.P.M.L. Apr. 8, 2022).

non-diverse parties, Pennsylvania Hospital and related enti-ties,[3] had been fraudulently joined because the plaintiffs had not demonstrated sufficient intent to pursue claims against them.

The district court denied remand to the state court, but, recognizing the novelty of its decision, certified its order for interlocutory appeal under 28 U.S.C. § 1292(b). Specifically, the district court certified two questions for appeal:

> (1) whether a plaintiff's failure, through their lit-igation actions, to demonstrate a real or good faith intent to pursue a claim against a non-di-verse defendant, is a basis for finding that the non-diverse defendant was fraudulently joined; and if so, (2) whether a plaintiff's failure over many months to pursue unanswered interroga-tories; taking of a singular, perfunctory deposi-tion; and a verbal representation that they will not seek an appeal of a dismissal of their action against the non-diverse defendant, meets the standard for finding 'no real intent' fraudulent joinder.[4]

---

[3] The plaintiffs named the Pennsylvania Hospital of the University of Pennsylvania Health System and the Trustees of the University of Penn-sylvania as defendants. We will refer to these entities collectively as "Pennsylvania Hospital" throughout the opinion.

[4] Abdullah R.27 at 15.

The defendants then petitioned this court for interlocutory review. We granted the petition and consolidated the appeals for briefing and disposition.

The courts of appeals have restricted fraudulent joinder to two situations: where the plaintiff has lied about jurisdictional facts, and where the plaintiff has no chance of success against the non-diverse defendant, taking all facts and law in the plaintiff's favor. Consistent with other circuits' approaches to fraudulent joinder,[5] we now hold that the district court's view of the fraudulent joinder doctrine is not consistent with the case law of the Supreme Court or of the courts of appeals, including this court.[6] Its belief that the plaintiffs had shown insufficient intent to pursue the litigation against Pennsylvania Hospital to judgment is not an appropriate basis upon which to predicate a determination of fraudulent joinder. Accordingly, we reverse the decision of the district court and remand the cases for further proceedings consistent with this opinion.

# I

# BACKGROUND

## A

The defendants, Mead and Abbott, manufacture cow's milk-based infant formula products ("Enfamil" and "Similac," respectively).[7] Each of the plaintiffs is the parent of a

---

[5] *See infra* note 18.

[6] While many circuits have addressed fraudulent joinder more generally, we have not found any published cases in which a circuit court addressed the theory of fraudulent joinder at issue here.

[7] Abdullah R.1-1, Ex. A-2 at 5.

child who was born prematurely at Pennsylvania Hospital in Philadelphia. The infants were fed either Similac or Enfamil during their hospital stay and subsequently developed necrotizing enterocolitis ("NEC"), resulting in long-term serious medical conditions. NEC is a gastrointestinal disorder that develops when harmful bacteria breach the walls of the intestine and cause inflammation and tissue death. The disease has a thirty percent mortality rate.

The cases now before us were filed in Pennsylvania state court on March 24, 2022. Plaintiffs Abdullah, Drayton, and Stills are citizens of Pennsylvania. Plaintiffs Carter and Wieger are citizens of New Jersey.[8] Each complaint was filed against Mead, Abbott, and Pennsylvania Hospital and alleges that the infant children developed NEC after being fed cow's milk-based baby formula produced by Abbott or Mead. The parents also allege that Pennsylvania Hospital failed to warn parents about the risk of NEC associated with cow's milk-based products and that it failed to develop policies to protect patients from exposure to NEC.

Shortly after the complaints were filed, Abbott removed the cases for the first time. The cases were removed to the Eastern District of Pennsylvania and then transferred to MDL No. 3026 in the Northern District of Illinois. The plaintiffs moved for remand and succeeded. The district court held that because the plaintiffs stated potentially viable claims against Pennsylvania Hospital, the doctrine of fraudulent joinder did not apply, and the federal district court lacked jurisdiction.

The cases returned to Pennsylvania state court on January 6, 2023. There, the parties began to conduct discovery, and

---

[8] Carter R.1-1, Ex. A-2 at 5; Wieger R.1-1, Ex. A-2 at 5.

Pennsylvania Hospital filed its "preliminary objections" (the Pennsylvania law analogue to a motion to dismiss). The state court entered a case management order on June 20, 2023, which set the end of discovery for October 2, 2023. At a case management conference on July 24, 2023, the plaintiffs revealed that they had yet to conduct any depositions of Pennsylvania Hospital. According to Abbott, the state court was "displeas[ed]" by this revelation and urged the plaintiffs to notice those depositions.[9] On the same day, the court entered a revised case management order requiring that all discovery be completed by June 3, 2024. The plaintiffs sent deposition notices to Pennsylvania Hospital on August 17, 2023. After conversations on scheduling, the first deposition was conducted in January of 2024. The plaintiffs deposed Dr. Lori Christ as the corporate designee of the hospital on January 22. They also deposed Dr. Karen Puopolo, the current section chief of newborn medicine at Pennsylvania Hospital on January 23. The plaintiffs later deposed Dr. Jeffrey Gerdes, a former section chief of newborn medicine at Pennsylvania Hospital, on June 13, 2024.[10]

The state court sustained Pennsylvania Hospital's preliminary objections on October 21, 2024, resulting in its dismissal from the case with prejudice. The state court explained simply that "the claims plead [sic] by plaintiff against the hospital based on the facts alleged, are not recognized under Pennsyl-

---

[9] Abdullah R.14-6 at ¶ 6.

[10] We take judicial notice of the deposition transcript cover sheets filed in the Plaintiffs' Required Short Appendix at A-48, A-49, and A-50, for the fact that these depositions have taken place. *In re Lisse*, 905 F.3d 495, 497 (7th Cir. 2018).

vania law."[11] The remaining parties held a "meet and confer" on October 30. On that occasion, Abbott asked the plaintiffs if they intended to appeal the dismissal of the hospital defendants. The parties have different understandings of this discussion. Abbott and Mead assert that the plaintiffs stated that they had no intent to appeal the dismissal whatsoever. The plaintiffs maintain that they intended to communicate that they had no plans to take an *interlocutory* appeal but did not relinquish the possibility of an appeal following entry of final judgment.

The next day, Abbott removed the case a second time. The second removal came five days before a scheduled pretrial conference in state court at which the state court intended to set the first case for trial.[12] On November 5, 2024, after learning about the removal, the state court entered an amended dismissal order allowing the plaintiffs to amend their complaints against the hospital defendants.

**B**

In the district court, the plaintiffs again moved to remand the cases to state court. They argued that the so-called "voluntary/involuntary rule" prohibited removal. Under that rule, a dismissed defendant's lack of diversity continues to prevent removal if, from the plaintiff's vantage point, the defendant's dismissal was involuntary. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71 (7th Cir. 1992). The plaintiffs argued that an exception to that rule, fraudulent joinder, was unavailable un-

---

[11] Abdullah R.10-7 at *2.

[12] The July 24, 2023 case management order set November 4, 2024 as a pretrial conference, with the expectation that trial would begin by December 2, 2024.

der the "law of the case" doctrine because the district court had declined to accept that theory when granting the first motion to remand. The plaintiffs also argued that the removal was untimely under 28 U.S.C. § 1446(c)(1) because the notice of removal had not been filed within one year of the filing of the case.

The district court denied the motion to remand. First, it concluded that removal was only possible if Pennsylvania Hospital had been fraudulently joined. The district court then rejected Abbott's and Mead's arguments that fraudulent joinder could be premised on a determination that the plaintiffs had no reasonable possibility of success on the merits against Pennsylvania Hospital. The district court took the view that the "law of the case" doctrine counseled toward adherence to its earlier ruling that the plaintiffs *did* have a reasonable possibility of success. The district court further noted that the state court's dismissal of the claims did not necessitate a determination of fraudulent joinder because the fraudulent joinder standard is significantly more generous to plaintiffs than Pennsylvania's preliminary objection standard.

Despite its determination that Abbott and Mead had failed to demonstrate that the plaintiffs had "no reasonable possibility of success" on their claims against the non-diverse defendants, the district court nevertheless concluded that Pennsylvania Hospital had been fraudulently joined for another reason: The plaintiffs had demonstrated "no real intention in good faith to prosecute the action."[13] The district court thought that there was "little doubt" that the plaintiffs had joined Pennsylvania Hospital for the sole purpose of defeat-

---

[13] Abdullah R.27 at 12.

ing diversity jurisdiction.[14] The district court noted that a hospital had been added as a defendant in only one other NEC case and that the plaintiffs in that case were represented by the same counsel as the plaintiffs in this case. It also observed that in cases where removal was not possible because of the forum-defendant rule, other hospitals were not added as defendants. In the district court's view, these considerations suggested that the plaintiffs were naming hospitals as defendants only when such a joinder was necessary to defeat federal diversity jurisdiction. Next, the district court concluded that the plaintiffs had not actively pursued their claims. The court noted that the plaintiffs had conducted only a single ninety-minute deposition in support of their case against Pennsylvania Hospital, and only at the apparent urging of the state court.[15] This conduct, the district court concluded, was sufficient to support a determination of fraudulent joinder.

Recognizing that premising a determination of fraudulent joinder on this basis was novel and largely unrecognized, the district court certified the issue for appeal under 28 U.S.C. § 1292(b).

---

[14] *Id.*

[15] Counsel for Abbott filed a declaration with their opposition to the motion for remand, stating that "[a]t a case management conference on July 24, 2023—16 months after plaintiff's case was initiated—the state court expressed its displeasure with plaintiff's lack of progress with discovery as to the hospital defendants. Among other things, the Court was displeased that plaintiff still had not noticed a deposition of the hospital defendants' corporate representative, and urged plaintiff to do so." Abdullah R.14-6 at ¶ 6.

## II

## DISCUSSION

We review a district court's denial of a motion to remand de novo.[16] Our court has not had occasion to confront the precise question of whether fraudulent joinder of a party can be grounded in the reason given by the district court. Our decision in *Poulos v. Naas Foods, Inc.*, 959 F.2d 69 (7th Cir. 1992), provides helpful context for the problem before us and, in doing so, articulates many important principles implicated in the task before us today. We therefore begin our analysis with an examination of that decision.

As in the present case, *Poulos* required that we explore the concept of fraudulent joinder in the context of transfer jurisdiction. In *Poulos,* we began our analysis by recalling some of the basic and long-accepted characteristics of federal diversity jurisdiction. *Id.* at 71. We stressed that the basic purpose of the constitutional grant of diversity jurisdiction is the need to provide a neutral forum for the litigation of cases involving parties from different states. In the course of that discussion, however, we also demonstrated that, from the early days of the Republic, the federal judiciary has been cautious about adopting a broad interpretation of this authority. This caution has been grounded in two constitutionally based considerations. First, the jurisdiction of the federal courts is grounded in congressional authority to create the lower federal courts and to fix their jurisdiction. Second, by its very nature, the ex-

---

[16] *Sarauer v. Int'l Ass'n. of Machinists & Aerospace Workers, Dist. No. 10*, 966 F.3d 661, 668 (7th Cir. 2020).

ercise of federal diversity jurisdiction diminishes the prerogatives and responsibilities of the state courts. *Id.*

As we noted in *Poulos*, one of the strongest expressions of our obligation of deference to congressional decisions about federal court jurisdiction can be found in an early volume of the United States Reports. There, deference to congressional authority gave birth to the rule of complete diversity enunciated by the Supreme Court in *Strawbridge v. Curtiss*, 7 U.S. 267 (1806). The Court recognized the congressional decision to require "complete diversity" when jurisdiction is predicated on the statute granting federal jurisdiction over civil actions "between a citizen of a state where the suit is brought, and a citizen of another state." *Id.* at 267; 28 U.S.C. § 1332(a).

Congress tends the statutory framework of federal court jurisdiction at a significant level of particularity and has made significant adjustments to the jurisdiction of the lower courts. *See, e.g.* Class Action Fairness Act, 28 U.S.C. § 1332(d); *see also* S. REP. No. 109-14, at 5, 7–12 (2005) (detailing congressional fine tuning of the diversity and removal statutes to provide for the significant increase in interstate class actions). On the specific question of removal, we noted in *Poulos* that a state court case that is not removable "in its original incarnation" may become removable later in the course of litigation in state court. 959 F.2d at 71. After the statutory amendments of 1949, § 1446(b) of the Judicial Code provides that a notice of removal may be filed within 30 days of the receipt by the defendant of an amended pleading "from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Notably, consistent with the traditionally parsimonious approach to diversity jurisdiction, such cases may be removed only within "one year of the com-

mencement of the action." *Id.* at § 1446(c). In *Poulos*, we also decided that the so-called "voluntary/involuntary rule" that had existed prior to the enactment of § 1446(b) survived that enactment. 959 F.2d at 72. Under this rule, a case not removable because of a lack of diversity does not become removable simply because the non-diverse party has been dropped. Rather, such a case is removable only if the plaintiff had voluntarily dismissed a non-diverse defendant. *Id.* at 71 (citing *Am. Car & Foundry Co. v. Kettelhake*, 236 U.S. 311, 316 (1915)). In short, we applied the congressional amendment but presumed no further change without explicit congressional authorization.[17]

In *Poulos*, we also identified, albeit more obliquely, another core value of diversity jurisdiction: the protection of the plaintiff's choice of forum. In discussing the voluntary/involuntary rule, we noted that, in addition to contributing to judicial economy by curbing the "yo-yo effect" of a party being

---

[17] Mead and Abbott argue in the alternative that the dismissal of Pennsylvania Hospital should be considered "voluntary," opening a path to removal under the voluntary/involuntary rule. But even under the Second Circuit's more expansive definition of "voluntary," which they urge us to apply, the dismissal of Pennsylvania Hospital cannot be so described. *Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38, 40 n.2 (2d Cir. 1980). The Second Circuit has held that the dismissal of a defendant is "the functional equivalent of a 'voluntary' dismissal" where a plaintiff takes some voluntary action that permanently removes the defendant from the case, such as allowing the deadline for an appeal to lapse. *Id.; see also Heniford v. Am. Motors Sales Corp.*, 471 F. Supp. 328, 334–35 (D. S.C. 1979). The plaintiffs have taken no such voluntary action here. They contested Pennsylvania Hospital's dismissal, opposing it in briefing and by filing amended pleadings to shore up their allegations. If we were to determine that such a dismissal was "voluntary," all dismissals where the opposing briefs or amendments are unavailing would be potentially "voluntary."

dismissed only to be reinstated on appeal, *Poulos*, 959 F.2d at 72, the rule also preserved the plaintiff's choice of forum by helping to ensure that a plaintiff would not be forced out of its chosen forum. Indeed, we noted that although this "principle of deference" to the plaintiff's choice of forum was "entirely inconsistent with the apparent purpose of the removal statute—to give defendants a means to escape the plaintiff's hometown forum," it is "consistent with our general desire to limit federal jurisdiction." *Id.* Indeed, just this past term, the Supreme Court emphasized that diversity plaintiffs are "ordinarily allowed to select whatever forum they consider most advantageous[,]" and have a "right to choose a state forum by purposefully and properly joining a nondiverse defendant against whom they could not proceed in federal court …." *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421, 433 (2026) (quoting *Atlantic Marine Constr. Co. v. United States Dist. Court for Western Dist. of Tex.*, 507 U.S. 49, 63 (2013)).

Consonant with the concerns identified in *Poulos*, our court, and indeed the other courts of appeals,[18] have recognized only two ways of establishing fraudulent joinder: First, by joining a non-diverse party by making false allegations of jurisdictional facts to support joinder. *Poulos*, 959 F.2d at 73.

---

[18] *Universal Truck & Equipment Co. v. Southworth-Milton, Inc.*, 765 F.3d 103, 108 (1st Cir. 2014); *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011); *Avenatti v. Fox News Network LLC*, 41 F.4th 125, 133 (3d Cir. 2022); *Skidmore v. Schinke*, 171 F.4th 319, 321 (4th Cir. 2026); *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 889 (5th Cir. 2024); *Voutsiotis v. PNC Bank, NA*, 178 F.4th 951, 959 (6th Cir. 2026); *Johnson v. Midwest Division-RBH, LLC*, 88 F.4th 731, 735 (8th Cir. 2023); *Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018) ("There are two ways to establish fraudulent joinder …."); *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013); *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011).

Second, by showing that the plaintiffs have "no chance of suc-
cess" in their claims against the non-diverse defendants, after
resolving all issues of fact and law in favor of the plaintiffs.
*Thornton v. M7 Aerospace LP*, 796 F.3d 757, 765 (7th Cir. 2015);
*see also Shur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764
(7th Cir. 2009).[19] All of our sister circuits that have faced the

---

[19] A handful of district courts have applied a test similar to the test applied
by the district court here. *Beal v. Armstrong Containers, Inc.*, No.22-cv-378,
2023 WL 6441348 *1, *5 (E.D. Wis. Sep. 30, 2023); *Faulk v. Husqvarna Con-
sumer Outdoor Prods. N.A., Inc.*, 849 F. Supp. 2d 1327, 1330 (M.D. Ala. 2012);
*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab.
Litig.*, 220 F. Supp. 2d 414, 421–22 (E.D. Pa. 2002); *Cogan v. Allianz Life Ins.
Co. of N. America*, 592 F. Supp. 2d 1349, 1355–56 (N.D. Ala. 2008) (finding
fraudulent joinder because there was no viable claim *and* because the
plaintiff had attempted to settle claims against non-diverse defendant
while simultaneously retaining them as parties to the suit); *Linnin v. Mich-
ielsens*, 372 F. Supp. 2d 811, 823 (E.D. Va. 2005); *Joe v. Minn. Life Ins. Co.*,
272 F. Supp. 2d 603, 605 (S.D. Miss. 2003). Mead and Abbott also point to
*McGuire v. Great N. Ry. Co.*, 153 F. 434, 439 (N.D. Iowa 1907), but that court
was concerned with whether there was a "fictitious cause of action" and
makes no mention of subjective intent. In any case, the Eighth Circuit ab-
rogated *McGuire* in *Morris v. E.I. Du Pont De Nemours & Co.*, 68 F.2d 788,
791 (8th Cir. 1934). *Leonard v. St. Joseph Lead Co.*, 75 F.2d 390, 394 (8th Cir.
1935) does not contradict this. The court in that case explicitly stated that
the joinder "is fraudulent if it is clear that under the law of the state in
which the action is brought, the facts alleged by the plaintiff as the basis
for the liability of the resident defendant could not create a joint liability
against him and his codefendant, so that the assertion of a joint cause of
action is, *as a matter of local law, plainly sham and fraudulent." Id.* (emphasis
added).

But we cannot accept the argument that the courts of appeals have done
so. The Eleventh Circuit has written that "[w]hen a plaintiff names a non-
diverse defendant solely in order to defeat federal diversity jurisdiction,
the district court must ignore the presence of the non-diverse defendant
and deny any motion to remand the matter back to state court." *Henderson*
( … continued)

issue articulate the fraudulent joinder standard in the same way. In sum, in addition to encompassing situations where the plaintiff misrepresents operative facts underlying a defendant's citizenship, the fraudulent joinder doctrine also encompasses situations where the claim against the non-diverse defendant "has no chance of success, whatever the plaintiff's motives." *Poulos*, 959 F.2d at 73 (collecting cases). But this latter category, seemingly expanding the usual definition of "fraudulent" to include situations where the usual scienter is not present, still places a "heavy burden" on the out-of-state defendant seeking removal despite the continued presence of an in-state defendant: The out-of-state defendant "must show

---

*v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). However, even after publishing *Henderson*, the Eleventh Circuit still explained that there are only two ways to establish fraudulent joinder, "either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Stillwell*, 663 F.3d at 1332 (citation modified). We have identified no cases in that circuit where, as here, the district court concluded that there was fraudulent joinder despite that the plaintiff *could* plausibly establish a cause of action against the defendant and that there were no fraudulently pled jurisdictional facts. Defendants also cite *Martin v. Norfolk & W. Ry. Co.*, 43 F.2d 293, 296 (4th Cir. 1930), but that case explicitly stated that the "plaintiff's motives in joining the resident defendants are immaterial." The defendants' Third Circuit case, *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006), comes the closest, stating that "joinder is fraudulent if 'there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" But the Third Circuit was quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985), which explicitly stated that motive "is not considered indicative of fraudulent joinder." And as the plaintiffs point out, the *Briscoe* decision did not rely on motive or subjective intent to find fraudulent joinder.

that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Id.* (emphasis in original). Indeed, in *Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011), we said that the defendant must show that the claim "is utterly groundless," because "a groundless claim does not invoke federal jurisdiction."[20]

Contrary to the argument set forth by Mead and Abbott, the approach of the circuits is entirely consonant with the views of the Supreme Court when it addressed fraudulent joinder in the early twentieth century.[21] Those cases show that fraudulent joinder can be found in only two situations, as do the decisions of the courts of appeals that have followed in their wake. Beyond the outright misrepresentation of jurisdictional facts, fraudulent joinder provides relief from the *Straw-*

---

[20] The defendants argue in the alternative that the district court erred by applying the "law of the case" doctrine to refuse to revisit its prior ruling under this standard. The district court did not abuse its discretion. It correctly noted that the "reasonable likelihood of success" standard required it to take both the facts *and the law* in the light most favorable to the plaintiffs, unlike the standard applied at the state court in the preliminary objection phase, which required only that the facts be taken in a favorable light. On that basis, it was well within its discretion to determine that the intervening state court decision dismissing Pennsylvania Hospital did not provide it with a basis for revisiting it prior ruling.

[21] *Ala. Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 218–19, 220 (1906); *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907); *Ill. Cent. R.R. Co. v. Sheegog*, 215 U.S. 308, 318 (1909) ("The joint liability arising from the fault of [the defendants] gave the plaintiff an absolute option to sue both if he preferred, and no motive could make his choice a fraud."); *Chi., Rock Island & Pac. Ry. Co. v. Schwyhart*, 227 U.S. 184, 193 (1913); *Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 281–82 (1918); *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).

*bridge* complete diversity requirement only when the pleadings make absolutely clear that the plaintiff cannot maintain any colorable claim against the non-diverse defendant. *See Ala. Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 219 (1906). In determining whether complete diversity is present, the federal court must limit its inquiry so as to respect the proper domain of the state courts to define according to their own procedures the contours of the rights and responsibilities imposed by their laws. Nor can we second-guess the plaintiff's decision to base his complaint on a particular state law even if the chances of success seem, at this early stage of the proceedings, far less than sure. *See Chi., Rock Island & Pac. Ry. Co. v. Schwyhart*, 227 U.S. 184, 193–94 (1913). "[T]he motive of the plaintiff, taken by itself, does not affect the right to remove. If there is a joint liability he has an absolute right to enforce it, whatever the reason that makes him wish to assert the right." *Id.* at 193.

The district court chose an approach that cannot be squared with the established case law delineating the permissible boundaries of the fraudulent joinder inquiry. The district court's inquiry sought to ascertain *the intent* of the plaintiffs in suing Pennsylvania Hospital not by assessing the truth of the jurisdictional facts in the pleadings nor by assessing whether the allegations against the hospital were entirely devoid of substance. Rather it attempted to ascertain, by examining the litigation strategy of the plaintiffs and their management of the litigation, whether the plaintiffs harbored any genuine interest in obtaining a judgment against the hospital. This inquiry took the court far afield of the jurisdictional facts and causes of action contained within the plaintiffs' pleadings. It sought to justify its determination of subject matter jurisdiction instead through an examination of the intensity of

the plaintiffs' discovery efforts and litigation activity in state court, and indeed, by reference to the litigation activity in the cases of other plaintiffs being handled by the same counsel. Its approach far exceeded the established methodology usually applied by the federal courts in assessing fraudulent joinder and set a course that intruded significantly into the proper domain of the state court and those who elect to litigate there.

The plaintiffs remind us that, as creatures of statute, the federal district and appellate courts must adhere to the plain and ordinary meaning of the statutory language granting them authority. Chief Justice Marshall articulated this basic principle in *Ex parte Bollman*, 8 U.S. (1 Cranch) 75, 93–94 (1807): "Courts which originate in the common law possess a jurisdiction which must be regulated by their common law, until some statute shall change their established principles; but courts which are created by written law, and whose jurisdiction is defined by written law, cannot transcend that jurisdiction." Here, Mead and Abbott ask that we depart from the finely tuned language of the jurisdictional statute and apply a rule that will require the district court to engage in an extensive investigation into the intent of the plaintiffs in naming the non-diverse defendants as parties. They ask that we presume, as a matter of statutory *interpretation*, that Congress departed from the generally accepted maxim that jurisdictional rules be clear and easy to apply and instead authorized this inquiry into the state court litigation. This would no doubt require significant examination of the customs and practices of the state courts in dealing with pretrial matters. Further, it would require a critical evaluation of the plaintiffs' litigation choices within those customs and practices and would likely leave plaintiffs wondering how much litigation activity they

must complete to avoid removal. Multiple attempts at removal and attendant satellite litigation might well follow.

As we see it, Mead and Abbott do not really ask that we *interpret* the current diversity statute and its companion transfer provisions, but that we *amend* those provisions. The course that the defendants ask us to take would work a major adjustment in the current rule of complete diversity. Surely, this is a task for Congress, not for the courts. The situation faced by the district court with the responsibility of dealing with so many MDL cases filed across the Country is indeed a daunting one. The present statutory scheme, designed in an era when litigation was less complex, may well be inadequate to the present task. But, if such is the case, remedial measures are the province of Congress. The needed task is not interpretation but enactment.

### Conclusion

The decision of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.[22]

---

[22] We note that two of the plaintiffs, Ms. Carter and Ms. Wieger, are citizens of New Jersey, rather than Pennsylvania, and therefore the jurisdictional and removal analysis as to them is different. However, neither side seems to have realized this until the appeal. The district court did not discuss the difference and justified their removal on the same basis as that of the Pennsylvania plaintiffs. Neither party has offered meaningful arguments that would allow us to assess the removability of the New Jersey plaintiffs under the forum-defendant rule. What is clear is that, like the Pennsylvania plaintiffs, the district court's finding that Ms. Carter and Ms. Wieger fraudulently joined Pennsylvania Hospital was in error. We decline to consider these undeveloped arguments regarding the forum-
( … continued)

Reversed and Remanded

---

defendant rule for the first time on appeal and instead remand for the district court to consider it in the first instance.